**FILED - GR**
January 13, 2009 3:19 PM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:_____cr____/_____

United States District Court
Western District of Michigan

Offringa, James A.
Pro Se
Plaintiff

V.

Davenport University
Defendant

**1:09-cv-30**

**Janet T. Neff**
**U.S. District Judge**

Case Number:

Background:

The plaintiff, James Offringa has a disability since birth. Is a current student at Davenport University. He has been working on a double major in Computer Networking and Computer Security. With his hearing loss of 100 db is defined as profound hearing loss. With hearing aid does help but has many limits. He has the ability to speak very clearly but hearing loss has still has limits. Like understanding various conversation over the phone, people with accents, loud or a lot of background noise, faces that I can not see ( like if a person was talking behind me). What helps a deaf person understand conversation where the person face can be easily seen (many people in the deaf culture can read lips very well), close caption TV shows, email, TTY ( a way that deaf can hold a conversation over the phone by machine), TTY relay service, flashing lights for door bell or phone and have a hearing dog.

For the past three or four years James Offringa has requested real time captioning (CART). CART is a way for anyone in the deaf culture understand what is being said in a classroom or court or meeting. It is very close to close caption on TV but the caption is real time. After the session any deaf person can receive the transcript at the end of the session for notes. Year after year he was denied the service requested that is required by law in the ADA statues. The only reason why I was denied by Davenport is that I must meet Davenport criteria to receive CART. From there my grades has suffered, dropped out of many classes due to no services.

Arguments:

Who has the final say; Davenport University policy or the Law which was passed by congress and sign by the president of the United States?

First off   Title 42 Chapter 126 U.S.C. § 12102 (2)(a) (b)(c) has defined what disability is:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

I have submitted documents from my doctor who has verified this disability I have.

Colleges or universities which receive any form of financial assistance or loans, for the institution or for students attending the institution, are federal financial recipients pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, as amended. The receipt of that funding by any component of the institution requires every program within the institution to comply with the civil rights requirements imposed by the receipt of federal funding. Civil Rights Restoration Act of 1978, 29 U.S.C. §794(b).

As a recipient of federal financial assistance, a post-secondary institution has an obligation under Section 504 of the Rehabilitation Act of 1973 to be accessible to students and other individuals with disabilities. As a part of this obligation, the U.S. Department of Education has determined that these institutions must provide necessary auxiliary aids for persons with sensory impairments, including interpreters for deaf or hard of hearing persons, transcribers, notetakers, and provision of closed captioning or other access for televised information. 34 C.F.R. §104.44(d). This obligation applies to all of the activities of the college, including extracurricular activities, off-site internships, and activities open to the public, or to part-time, non-credit or non-matriculated students, and to employees.

There is a second federal statute which creates the obligation to provide auxiliary aids for public colleges and universities. Title II of the Americans with Disabilities Act, 42 U.S.C. §§12182, and 12183, (ADA) provides people with disabilities with rights to equal access to all state and local government activities and agencies, regardless of receipt of federal funds. The U.S. Department of Justice has issued regulations explaining the requirements of Title II of the ADA, 28 C.F.R. Part 35, 56 Fed. Reg. 35694 (July 26, 1991). Title III of the ADA applies the same standards to private schools and colleges, as well as to all places of public accommodation.
The ADA requires public colleges and universities to provide qualified sign language interpreters, and other auxiliary aids, to ensure effective communication with deaf and hard of hearing individuals. In addition, a college may have to modify its procedures to assure that the deaf student is able to participate equally and effectively in college programs. The Department of Justice regulation specifically states:

(a) A public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as

effective as communications with others.
(b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.
(2) In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities.
28 C.F.R. §35.160.
The Department of Justice regulation defines the term auxiliary aid comprehensively:

[q]ualified interpreters, notetakers, computer-aided transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunication devices for deaf persons [TTYs], videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments.
28 C.F.R. §35.104. In addition to providing interpreter services or other appropriate methods of making classroom activities accessible, colleges and universities must purchase captioned video and film resources, where available, and assure that television, telephone and computer services are accessible.
The U.S. Department of Justice has defined "qualified interpreter," for purposes of Title II, to mean:

. . . an interpreter who is able to interpret effectively, accurately and impartially both receptively and expressively, using any necessary specialized vocabulary.
28 C.F.R. §35.104. See generally, Patrick, 7 NDLR 470 (1995).
The Office for Civil Rights has held that the three basic components of "effective" communication are timeliness of delivery, accuracy of the translation, and provision of communication in a manner and medium appropriate to the significance of the message and the abilities of the individual with the disability. Few university administrators have depth of knowledge about methods of making programs accessible to persons with the wide range of disabilities who are protected by these laws. Planning and consultation with disability organizations are necessary to assure compliance with Title II. Courts have held that a public entity violates its obligations under the ADA when it simply responds to individual requests for accommodation on an ad-hoc basis A public entity has an affirmative duty to establish a comprehensive policy in compliance with Title II, in advance of any request for auxiliary aids or services. See Tyler v. City of Manhattan, 857 F.Supp. 800 (D. Kan. 1994).
Based upon what the law have said here are the facts:  Davenport University does receive federal funding.   For them to receive such funding they must comply to all ADA request long as the plaintiff has met the requirement stated by law.  The last four years I have seen a brand new campus being built.  There are no TTY for the payphones,  no induction loops in class rooms, no  dorm rooms

fitted for the deaf and no induction loop in the public address system. From what I see they have no intention of providing any services for the deaf culture at all. Lastly Davenport told me that I must meet their criteria for receiving CART is to have no hearing, no hearing aids, and have limited communication. They also had shown no intention on using outside source to learn what is necessary to meet the requirements. Outside source such as DOJ, or Deaf advocates.
I firmly believe that the law has the final say over a written policy. The policy itself does discriminate the deaf culture in many ways.
Relive or Actions:
Ten million dollars in damages.
Provide CART for the remaining of my classes, to date I have 7 or 8 more classes left.
Remove all classes I have withdrawn, and all classes I have failed due to no accommodations from my official transcript.
Install induction loops in class rooms, and pubic address system must be hooked up with induction loop as well.
Install TYY by all payphones on campus.
Have dorm room fitted for the deaf.
Meet with local deaf advocates to learn more about what is needed for the deaf culture on a yearly time frame.
Failure to comply will result stoppage to the current dorm construction and / or freeze all federal funds that applies to the University
All statements are true to the best of my ability.

*[signature]*
Pro Se
1-8-2009